# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 08-60216-CIV-DIMITROULEAS/ROSENBAUM

NEW RIVER DRY DOCK, INC.,

      Plaintiff,

vs.

THE FALLS AT MARINA BAY, L.P.,
THE MARINA AT MARINA BAY, LP.,

      Defendants.

_____/

## AMENDED ORDER[1]

This matter is before the Court on Defendants' Motion for Leave to Serve In Excess of Twenty-Five Interrogatories. [D.E. 29]. A hearing was held regarding Defendants' Motion on June 19, 2008. [D.E. 64]. The Court has reviewed the Motion, Plaintiff's Response dated May 21, 2008 [D.E. 34], Defendants' Reply dated May 29, 2008 [D.E. 36], the underlying record in this case, and is otherwise fully advised in the premises. For the reasons set forth below, the Motion will be granted in part and denied in part.

## BACKGROUND

The case stems from a property dispute between Plaintiff and Defendants that began in 2000. In the Second Amended Complaint for Declaratory and Injunctive Relief dated November 16, 2006, Plaintiff alleges that Plaintiff, New River Dry Dock, Inc. ("Plaintiff New River"), owned real

---

[1]This Order is amended only for the purpose of addressing Point I of Defendants' Motion for Clarification of Order Partially Granting Motion for Leave to Serve in Excess of Twenty-Five Interrogatories [D.E. 68]. *See infra* at pp. 2-3.

property at 2698 SW 23rd Avenue, Fort Lauderdale, Florida ("New River Property").[2] [D.E. 2, Part 4].  Defendant The Falls at Marina Bay, L.P. ("Defendant The Falls"), owns real property located at 2525 Marina Bay Drive, Fort Lauderdale, Florida  ("Falls Property").  Defendant The Marina at Marina Bay, L.C. ("Defendant Marina Bay), is the owner of real property adjacent to the Falls Property ("Marina Bay Property").  As the owner of the New River Property, Plaintiff New River had a roadway easement over the Marina Bay Property and the Falls Property pursuant to a 1958 easement agreement that was modified by a 1984 easement agreement. *Id.*  Under the terms of both easement agreements, Defendants The Falls and Marina Bay, the servient tenements, allegedly agreed to provide the owner of the New River Property, the dominant tenement, with continuous access over the Falls Property and the Marina Bay Property. *Id.*

The original complaint in this case was filed in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida,  in October, 2000, over a dispute regarding whether an alternative easement provided by Defendant Marina Bay interfered with the rights of Plaintiff New River and its tenant, Marina Mile Shipyard, Inc. ("MMS"), under the 1984 easement. [D.E. 2, Part 4].  The Circuit Court addressed the issue in an Order dated February 12, 2001, which granted Plaintiff temporary injunctive relief, and directed Defendants The Falls and Marina Bay to return the original easement as described in the 1958 easement agreement to a paved status within thirty days, and record the documents necessary to reinstitute the original easements in the public records. [D.E. 2, Part 4, Ex. H].  Alternatively, the Circuit Court Order allowed Defendants to obtain compliance as follows:

If Defendants comply with the original 1958 Easement Agreement as

---

[2]According to Defendants, Plaintiff New River sold its property and easement rights on June 4, 2007, to Intervenor, SPVEF-SKID, LLC. [D.E. 29, ¶ 1, n. 1]

> modified by the 1984 Easement Agreement which Easement
> Agreements set forth a method by which the Original Easement may
> be vacated, then Defendants need not restore the Original Easement.

*Id.* According to Plaintiff, Defendants failed to comply with the Circuit Court Order that barred Defendants from interfering with, impeding, blocking, or negatively affecting the right of free and unimpeded passage and access to the New River Property over the easement without first obtaining permission from Plaintiff. *Id.* As a result of Defendants' failure to comply, among other allegations, Plaintiff asserts substantial disruption of business to Plaintiff and its former tenant, MMS, eviction of MMS and complete shut-down of the New River Property by City of Fort Lauderdale. *Id.*[3]

Plaintiff filed a voluntary bankruptcy petition in federal Bankruptcy Court in July of 2006, and after notice was properly filed, Plaintiff removed the then pending state court litigation to bankruptcy court. [D.E. 1]. Defendants moved to withdraw the reference to the bankruptcy court on February 19, 2008 [D.E. 1], which the Court granted on March 27, 2008. [D.E. 9]. Plaintiff's Second Amended Complaint seeks damages for alleged breach of an easement agreement, a $10,000.00 daily fine for an alleged violation of the Circuit Court's Order, damages for alleged trespass, and damages for alleged civil conspiracy. [D.E. 2, Part 4].[4]

In the Motion now before the Court for consideration, Defendants seek leave of Court to serve in excess of the presumptive limit of twenty-five interrogatories. Specifically, Defendants seek leave to serve what effectively amounts to approximately fifty additional interrogatories upon Plaintiff. Defendants claim that the information sought in the additional interrogatories is relevant

---

[3] MMS was originally a named plaintiff in the Circuit Court case, but it assigned its rights to Plaintiff New River.

[4] Counts regarding declaratory judgment and injunctive relief were dismissed with prejudice on November 27, 2007, while the case was in federal Bankruptcy Court.

to the issues involved in this action, the additional interrogatories are not unduly burdensome, and they are reasonably calculated to lead to the discovery of admissible evidence. [D.E. 29, ¶ 24]. In their Motion, Defendants argue that their proposed Interrogatories are reasonable "based solely on the amount of damages sought by Plaintiff," which Defendants contend Plaintiff's counsel characterized as worth $20-30 Million. *Id.*, ¶ 22. Defendants also assert that the fact that they have not previously served interrogatories and that the "case involves a unique fact pattern, different corporate entities and allegations that span several years," all provide further grounds for the additional interrogatories. *Id.*, p. 9. In support of these factors, Defendants note that the parties have agreed that each side may take up to fifteen depositions each, excluding depositions of expert witnesses. *Id.*, p. 6. Defendants expect the parties to take twenty-five fact depositions and eleven expert witness depositions, and estimate that the trial will take between ten and fifteen days. *Id.* Finally, Defendants contend that the "complex nature of this case, the amount in controversy, the amount of documentary discovery conducted thus far and the number depositions to be taken provides a reasonable basis to permit Defendants to serve more than the permitted 25 interrogatories." *Id.*, p. 9.

Plaintiff New River responds, arguing that Defendants' interrogatory questions are of "compound construction" and do not comport with the Discovery Practice Handbook published as an Appendix to the Local Rules, which states that questions should be "brief, simple, particularized and capable of being understood by jurors when read in conjunction with the answer," and "reasonably particularized." [D.E. 34, p. 1, quoting Gen. App. To the Local Rules for the S.D. Fla., IV.A.(2); IV.A.(9)]. Plaintiffs also argue that Defendants' interrogatories wrongly seek for "Plaintiff [to] lay out in great detail precisely how its attorney intends to prove its case." *Id.*, p. 3. Moreover, Plaintiff complains the interrogatories are burdensome, vexatious and oppressive. *Id.* According

4

to Plaintiff, Defendants have failed to meet the standard of "good cause" that would allow Defendants the additional interrogatories, and, thus, their motion should be denied. *Id.* Alternatively, Plaintiff urges that Defendants should be limited to a reasonable number of interrogatories, without prejudice to Plaintiff's right to interpose such objections as appropriate. *Id.*, p. 3-4.

In their Reply, Defendants state that they believe their interrogatory questions are consistent with Rule 33's numerical limitation and applicable case law, and assert that "each interrogatory and any respective subpart regarding a 'common theme' should be counted as one interrogatory," and "not as separate interrogatories." [D.E. 36, p. 1-2; 4]. Defendants assert that for each interrogatory, "each subpart is logically and /or factually related to the information sought in the primary question." Defendants also represent that "[i]f Plaintiff's response to the primary question is affirmative, then the related subparts seek further related information on the same subject." *Id.*, p. 4.

Furthermore, according to Defendants, Defendants' interrogatories are supported by the principles of Rule 26(b)(2) because (1) they are not cumulative or duplicative and cannot be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) Defendants have not had ample opportunity to obtain the requested information by discovery in this action, as Plaintiff has not fully provided documents in response to Defendants' prior document requests and Defendants have never requested interrogatories prior to this Motion; and (3) the burden or expense of answering the interrogatories does not outweigh the likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery resolving the issues. *Id.*, p.4-7.

Alternatively, Defendants argue that if the Court does not deem each subpart as a component of each interrogatory under a "common theme," Defendants request leave to serve in excess of

twenty-five interrogatories due to (i) the complexity of this case; (ii) the intricate fact pattern; (iii) the many legal issues and defenses; (iv) the several years covered by Plaintiff's allegations; (v) amount of documentary discovery produced by Defendants thus far; and (vi) the number of depositions to be conducted.  *Id.*, p. 2.  Based on these arguments,  Defendants allege they have met the "good cause" standard, and request that their Motion be granted.  *Id.*, p. 7-8.

### ANALYSIS

Rule 33(a) of the Federal Rules of Civil Procedure provides, in pertinent part, "Without leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts...."  This amendment was added in 1993 to reduce the frequency and increase the efficiency of interrogatory practice.  *See* Advisory Committee Note to 1993 Amendment to Fed. R. Civ. P. 33; *see also Safeco of America v. Rawstron*, 181 F.R.D. 441, 443 (C.D. Cal. 1998).

Although Rule 33(a) refers to "discrete subparts," the Rule does not define the term.  The Advisory Committee provided some guidance on this issue when it stated,

> [A] question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each communication.

Further, the Court in *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) construed the term "discrete subparts" as meaning that "interrogatory subparts are to be counted as one interrogatory . . . if they are logically or factually subsumed within and necessarily related to the primary question."  The Court in *Kendall* further explained,

> Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question.  Or can the subsequent question stand alone?

6

Is it independent of the first question?

*Kendall*, 174 F.R.D. at 685. These guidelines have subsequently been used by other courts to determine whether a party has exceeded the presumptive limitation on interrogatories as set forth in Rule 33(a). *See, e.g., Trevino v. ACB American, Inc.*, 232 F.R.D. 612 (N.D. Cal. 2006); *Safeco of America v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998); *Talevski v. Carter*, 2007 WL 1797634 (N.D. Ind. 2007). The Southern District of Florida has also embraced the guidelines set forth in *Safeco*, *supra,* by asking whether the subparts of an interrogatory are logically subsumed within and are necessarily related to the primary question. *See Federal Trade Commission v. Nationwide Connections, Inc.*, 2007 WL 2462015 (S.D. Fla. 2007) (finding that subparts of interrogatory were logically subsumed within and necessary to the primary question).

Courts have also used a "common theme" approach to discern how many interrogatories should be credited against a party. Specifically, an interrogatory directed at eliciting details concerning a common theme should not be counted as multiple interrogatories. *Cardenas v. Dorel Juvenile Group, Inc.*, 231 F.R.D. 616, 620 (D. Kan. 2005) (citing 8A Wright & Miller, *Federal Practice and Procedure* § 2168.1 at 261 (2d ed. 1994) ("[I]t would appear that an interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question, although the breadth of an area inquired about may be disputable. On the other hand, an interrogatory with subparts inquiring into discrete areas is more likely to be counted as more than one for purposes of the limitation."); *see also Swackhammer v. Sprint Corporation PCS,* 225 F.R.D. 658 (D. Kan. 2004). Thus, subparts of interrogatories that relate to a common theme should not be counted as separate interrogatories, but those subparts that inquire into areas apart from the common theme should be counted as separate interrogatories. *Id.*; *See, e.g., Border Collie Rescue, Inc. v. Ryan*, 2005 WL 662724 (M.D. Fla. 2005) (interrogatories at issue found to concern a common

7

theme).  Court have also held that the request for identification of documents should be counted as a separate interrogatory.  *Banks v. Office of the Senate Sergeant-At-Arms*, 222 F.R.D. 7, 10 (D. D.C. 2004) ("[A] demand for information about a certain event and for the documents about it should be counted as two separate interrogatories."); *Kendall,* 174 F.R.D. at 686.

Federal Rule 33(a) also provides that leave to serve additional interrogatories should be granted when consistent with the principles of Rule 26(b)(2).  Hence, the principles set out in Rule 26(b)(2)(C) govern the Court's decision whether to grant Plaintiff's request to serve additional interrogatories.  Rule 26(b)(2)(C) states that discovery should be limited if the Court determines that the requested discovery is unreasonably cumulative or duplicative, the party seeking discovery has had ample opportunity to obtain the information sought, or the burden or expense outweighs the likely benefit.  Fed. R. Civ. P. 26(b)(2)(C)(i),(ii),(iii).

The Court conducts a case-by-case analysis in determining whether a party may exceed the allotted number of interrogatories set forth in Rule 33.  *See* 8A Wright, Miller & Marcus, Federal Practice and Procedure § 2163 (2d ed. 1994).  To propound more than twenty-five interrogatories, the party seeking leave must set forth a particularized showing of need.  *Duncan v. Paragon Publishing, Inc.*, 204 F.R.D. 127 (S.D. Ind. 2001*); Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minnesota*, 187 F.R.D. 578, 586 (D. Minn. 1999); *Burkett v. Hyman Lippitt, P.C.*, 2007 WL 3124637 (E.D. Mich. 2007).

Additionally, the Court notes that where a party seeks to take more than ten depositions, the party must justify the necessity of each deposition *previously taken* without leave of court.  *Mazur v. Lampert*, 2007 WL 676096 (S.D. Fla. 2007); *Barrow v. Greenville Independent School District*, 202 F.R.D. 480 (N.D. Tex. 2001).  Although the Plaintiff here is not seeking to take additional depositions, and, thus, the circumstances are not identical, the Court finds the reasoning behind this

8

requirement to be persuasive here.[5]  Requiring the party to justify prior depositions precludes the possibility that "a party could circumvent the cap on depositions by exhausting the maximum allotted number to take those that she could not justify under Rule 26(b)(2) standards, and then seeking leave to exceed the limit in order to take depositions that she could substantiate." *Barrow*, 202 F.R.D. at 483.  The Court sees no reason why this policy should not apply with equal force in the context of seeking additional interrogatories.

Here, the Court has reviewed the proposed interrogatories by Defendants and finds that based on the "common theme" test, there are clearly more than twenty-five interrogatories. However, in a vacuum, Defendants appear to have shown good cause to exceed the twenty-five-interrogatory limit, based on the number of depositions that each side proposes to take, the extensive litigation history in this case, the damages sought, and the estimated length of the trial.  Additionally, Defendants have not previously propounded any interrogatories to Plaintiff throughout the litigation history of this case in state court, bankruptcy proceedings and district court.  Nonetheless, Defendants still need to make a particularized showing of the need for each proposed interrogatory.

During the June 19th hearing, Defendants had an opportunity to show particularized need for each proposed interrogatory, and Plaintiff an opportunity to object.  The following is a summary of the holdings set forth during the June 19th hearing regarding each of Defendants' proposed interrogatories. [D.E. 29, p.12-20].

**Interrogatories No. 1, 1a, 1b, 21, 21a, 21b, 22**

---

[5]    The Advisory Committee Note to the 1993 Amendment to Fed. R. Civ. P. 33 acknowledged the similarity between requesting additional depositions and requesting in excess of twenty-five interrogatories when it noted that "[a]s with the number of depositions authorized by Rule 30, leave to serve additional interrogatories is to be allowed when consistent with Rule 26(b)(2)."

During the June 19th Hearing, the Court announced that these interrogatories were over broad or unduly burdensome based on objections from Plaintiff, and Defendants submitted that they would redraft these interrogatories within three days of the June 19th hearing, and resubmit them to Plaintiff.

**Interrogatory No. 2**

Defendants' proposed interrogatory reads as follows:

2.

> a.    Identify . . . all persons and/or entities that have had an/or currently have an actual beneficial interest in the ownership of the corporate entity, New River Dry Dock, Inc., and set forth the amount of each such interest, the amount paid for each such interest, the financial details of each such transaction, the date that each such interest was acquired, sold, changed or otherwise disposed of, and the parties to the transactions where each such interest was acquired, sold, changed or otherwise disposed of and

> b.    Identify . . . each document detailing each of such transaction listed above.

Plaintiff objected to this interrogatory because it alleged that the interrogatory overlapped with documents that Plaintiff and non-party Mary Wickman were directed to produce to Defendants pursuant to the subpoena served on Ms. Wickman on May 23, 2008, and, thus, was duplicative and unnecessary.  [*See* D.E. 40, Ex. D].  Defendants countered that they were unsure whether they were going to receive all the documents from Plaintiff and Ms. Wickman, and that there is an issue of contention as to who has or had an ownership right in Plaintiff New River, that may not be reflected in Plaintiff's documents.

The Court found that Plaintiff had already effectively agreed to produce all corporate documents responsive to this interrogatory when Ms. Wickman agreed to provide such documents in her capacity as records custodian for Plaintiff, pursuant to Ms. Wickman's subpoena.  In addition

to the production of the documents, the Court directed Plaintiff to identify to Defendants all persons or entities that have or had any actual or beneficial interest in Plaintiff New River, the amount of the interest, and the date such individuals or entities acquired the interest, in response to this interrogatory.

**Interrogatories No. 3, 10, 10a, 10b, 11, 11a, 11b, 12a, 12b, 13, 13a, 14, 14a, 14b, 15a, 15b, 16, 16a, 16b, 19, 20, 23, 24, 24a, 24b, 24c, 24d, 24e**

Plaintiff did not object to these interrogatories and agreed to respond to Defendants.

**Interrogatories No. 3a and b**

Defendants' proposed interrogatory reads as follows:

> 3.      With regard to the purchase of the Property by Plaintiff, identify . . . the purchaser, set forth date of purchase, the amount paid and the financing details thereof.
>
> > a.      State the names, addresses, telephone numbers and current residence addresses of all persons and/or entities that had an actual or beneficial interest in the ownership of said Property, and state the amount of such interest, the amount each such person and/or entity paid for their interest in the property, and the date(s) that each such person and/or entity acquired interest in said Property.
> >
> > b.      Identify . . . each document detail and/or relating to such transactions.

Regarding part 3a, Plaintiff objected that the interrogatory seeks the same information requested in Interrogatory 2b. Defendants disagreed and stated that they were asking for information regarding interests in the property, as opposed to ownership interests in the Plaintiff's corporation.

The Court directed that Plaintiff respond to this interrogatory to the extent that responsive information exists that does not appear in the documents. Part 3b of this interrogatory is subsumed in the Court's direction to Plaintiff.

11

**Interrogatory No. 4**

Plaintiff did not object to any part of Interrogatory No. 4 (4, 4a, 4b).  Thus, the Court directed that Plaintiff provide all financial records as requested in this interrogatory, and to the extent that the documents do not completely answer the interrogatory, Plaintiff shall provide Defendants with a written response.

**Interrogatory No. 5**

Defendants' proposed  interrogatory reads as follows:

5.

    a.    For the period of time from the date that Plaintiff purchased the Property until June 11, 2007, list by date, each incident where you contend that an obstruction, restriction, hindrance or impairment of access by land or by water to the Property of a person, business contractor, customer, vendor, visitor, crew member, salesman, employee, principal or invitee occurred, and set forth for each such incident, the parties, boats and/or vehicles involved, the time and date of each such incident, and the circumstances, descriptions and /or manner of the obstruction, restriction, hindrance or impairment.

. . . .

The Court found that this interrogatory is relevant but should be separated into two separate interrogatories, one regarding "access by land" and the other regarding "access by water."

Regarding parts 5a, 5,b, 5c, 5d, and 5f of this interrogatory, Plaintiff agreed to respond to each part, as separated by "access by land" and "access by water."

**Interrogatory No. 6**

The disputed parts of Defendants' proposed  interrogatory reads as follows:

6.

        a.       Set forth the precise manner in which the current configuration and condition (speed bumps, guard house, etc.) of the current easement differs from the 1984 easement.

        b.       For each manner in which the current configuration and condition of the current easement differs from the 1984 easement, separately set forth the precise manner in which Plaintiff claims that the configuration of the current easement caused Plaintiff and/or Marina Mile Shipyard caused any monetary losses, loss of income, business damages, loss in property value or other damages. Also set forth the amount of each type of aforementioned loss and/or damage, and the manner in which you calculate such losses and/or damages.

. . . .

Defendants explained that in this interrogatory, they wished for Plaintiff to itemize each part of the current access that Plaintiff contends differs from what is required by the 1984 easement and to attribute to each such aspect a pro rata share of the damages Plaintiff claims. For example, Defendants stated Plaintiff should break out the loss figure tied to the guard house, as opposed to the re-direction of the road, and so forth.

While Plaintiff conceded that Defendants were entitled to know Plaintiff's damages and how Plaintiff calculated them, Plaintiff asserted that it was impossible to identify how each part of the current configuration specifically caused damages. In response, Defendants argued that as the only outstanding issues are causation and damages, in order to properly defend their case, they were entitled to know how the specific configurations caused by Defendants, such as the road, guardhouse or speed bumps, etc., allegedly caused damages to Plaintiff.

The Court found that nothing required Plaintiff to attribute damages to each aspect of the current easement configuration, and doing so was impractical and not likely to be possible. Thus, the Court narrowed Defendants' interrogatory and directed Plaintiff to provide the following

information to Defendants: the configuration differences Plaintiff contends contributed to Plaintiff's alleged damages, the losses Plaintiff attributes to the conditions as a whole, and the way in which Plaintiff calculated its alleged losses.  Pursuant to the revised scope of the interrogatory, Plaintiff agreed to respond to parts 6c, 6d and 6e.

**Interrogatory No. 7**

The disputed parts of Defendants' proposed  interrogatory reads as follows:

> 7.      Set forth all facts and the basis of your claim hat Defendants' alleged actions diminished the market value of the Property, listing by date:
>
>> a.      All incidents of such diminishment and precise description of the nature, manner and amount of the diminishment;
>
> . . . .

Defendants represented that this interrogatory was necessary in order to discover when and how different easements allegedly diminished the value of the property, and all the ways in which Plaintiff contends that Defendants diminished the value of the property.  More specifically, Defendants asserted that they wanted to know about which easements Plaintiff was complaining.

Plaintiff objected that describing the ways in which Defendants diminished value was unduly burdensome and impossible, as the totality of all Defendants' actions, and not specific incidents on specific dates alone diminished the value of their property.

The Court held that this interrogatory would be limited, and directed Plaintiff to identify all the ways in which Plaintiff contends Defendant diminished the value of the property, to the extent possible based on specific configurations of Defendants, with dates of diminishment.

Based on the revised scope of this interrogatory, Plaintiff agreed to respond to part 7b.  Parts 7c and 7d were subsumed in the Court's revised scope of this interrogatory.

**Interrogatory No. 8**

The main paragraph of this proposed interrogatory reads as follows:

> 8.    Other than the damages set forth in response to ##5-7 above, state the nature, type and the amount of any and all other damages, business damages, loss in property value, losses, loss of income and or loss of business which Plaintiff claims it and/or Marina Mile Shipyard sustained as the result of Defendants' actions, and for each such damages, loss of property value, and/or loss of income, set forth:
>
> > a.    Set forth, by date of occurrence, the specific actions by Defendant[s] which caused Plaintiff and/or Marina Mile Shipyard to sustain any and all other damages, business damages, loss in property value, losses, loss of income and or loss of business.
> > . . . .

Similar to the Court's narrowing of Interrogatory No. 7 above, the Court limited the breadth of this interrogatory and directed Plaintiff to provide any damages that are not set forth in its responses to Interrogatories No. 5-7, including generally the categories of damages sought by Plaintiff, the amounts of damages for each of those categories, and how Plaintiff calculated those damages.

Parts 8b, 8c, 8d and 8e are subsumed in the Court's narrowing of this interrogatory.

**Interrogatory No. 9**

Defendants' proposed interrogatory reads as follows:

> 9.    For the period of time from the date that Plaintiff purchased the Property until June 11, 2007, set forth, by date, the amounts expended by Plaintiff or anyone else to improve, repair, maintain, change, alter or upgrade the Property and the personal property on said real property.
>
> > a.    For each item of expense listed above, detail the nature of the improvement, repair, maintenance, change, alteration or upgrade, its costs, the amount paid to whom it was paid and the date paid;

b.      Identify . . . each person, company, corporation and/or entity that performed any work and/or service to improve, repair, maintain, change, alter or upgrade the Property, and the dates that such work, service, improvement, repair, maintenance, change, alteration or upgrade was performed; and

c.      Identify . . . each document that pertains to, supports, evidences, proves or relates to such work, service, improvement, repair, maintenance, change , alteration or upgrade.

Defendants contended that the purpose of this interrogatory was to discover which violations of the governmental code that Plaintiff or the owners of Plaintiff were aware of when Plaintiff bought the property and what they did to bring the property up to code. Defendants explained that this is relevant because Defendants want to be able to prove that Plaintiff did not mitigate its damages, as alleged in the Complaint. Specifically, Defendants want to demonstrate that if Plaintiff had knowledge of the code violations and did not attempt to fix the code violations, Plaintiff would have been shut down and its business would have failed, regardless of Defendants' actions. Additionally, Defendants stated that they wish to use information about improvements Plaintiff made for purposes of defending against Plaintiff's damages claims.

Plaintiff countered Defendants' argument, noting that if they claim damages for any of the upgrades, changes or repairs to the property, such information would already be included in Plaintiff's responses to the interrogatories regarding damages. As to the code violations, Plaintiff asserted that documentation from the City of Fort Lauderdale already identifies such violations cited on the property , as well as Plaintiff's actions to address violations. Defendants responded that while the City of Fort Lauderdale cited Plaintiff's property for code violations, there is reason to believe that prior to the citation for code violations, Plaintiff had knowledge of code issues and did not mitigate or address these issues, which would not be reflected in the City of Fort Lauderdale's

16

documentation.

The Court found that this interrogatory as written was over broad and narrowed the interrogatory, directing Plaintiff to provide Defendants with information about what Plaintiff did to fix code violations to bring the property up to code. Additionally, Plaintiff must identify any actions taken to address the code violations, that are not reflected in the records. Plaintiff need not identify other actions to improve the property. To the extent Plaintiff seeks damages relating to improvements, such information should be reflected in its damages calculations responsive to earlier interrogatories.

**Interrogatory No. 12c**

The disputed part of proposed interrogatory No. 12 reads as follows:

> 12.    . . . .
>        c.    Identify . . . each document that pertains to, supports, evidences, proves or relates to any dispute over lease payments and the eviction of Marina Mile Shipyard.

After discussion regarding this interrogatory, Plaintiff agreed that it would produce all files relating to the New River and MMS litigation as it regards to lease issues, except the confidential settlement agreement between Plaintiff New River and MMS.[6]

**Interrogatory No. 13b**

---

[6] Plaintiff objected that responding to this request could require it to produce the confidential settlement agreement between Plaintiff and MMS that settled their litigation regarding eviction. The Court directed the parties to *Jeld-Wen, Inc. v. Nebula Glasslam Int'l, Inc.*, 2008 WL 756455 (S.D. Fla., March 11, 2008), and informed the parties that assuming that the settlement agreement is relevant and has no other distinguishing factors, the Court would handle analysis of whether the production of a confidential settlement agreement would be required as set forth in the *Jeld-Wen* case. If the parties are unable to work out an agreement amongst themselves regarding the settlement agreement at issue, then the parties could bring a motion before the Court, and MMS would be directed to be present. The Court noted that if it required production of the confidential agreement, it would do so under a protective order.

The disputed part of Defendants' proposed interrogatory reads as follows:

> 13.    Set forth by date and with sufficient particularity, all efforts to mitigate Plaintiff's and/or Marina Mile Shipyard's alleged losses, including but expressly not limited to, all efforts to re-lease, operate or sell the property after Marina Mile Shipyard was evicted.
> . . .
>
> b.    Identify . . . each document that pertains to, supports, evidences, proves or relates each such mitigation effort.

Regarding part 13b, Plaintiff objected to this interrogatory as over broad and inappropriate. Plaintiff contended that the information sought was the same as that requested in the subpoena issued to Ms. Wickman and which Plaintiff is already producing. Further, Plaintiff argued that this interrogatory essentially asked Plaintiff to review all the documents and tell Defendants how the documents relate to Plaintiff's mitigation efforts, which Plaintiff asserts is unduly burdensome.

The Court agreed that the subpoena touched on the same issues probed by this interrogatory, and thus, directed Plaintiff to provide information to Defendants regarding mitigation efforts to the extent that such information is not provided in the documents provided to Defendants.

**Interrogatory No. 17**

The main part of this proposed interrogatory reads as follows:

> 17.    List by date each effort (including but not expressly limited to, obtaining necessary permits, obtaining governmental consent and approval and granting the necessary easements), attempt, inquiry, estimate, bid, proposal, application, contract or agreement by Plaintiff and or Marina Mile Shipyard to remediate, repair, rebuild, alter or otherwise bring the Property into compliance with the  applicable codes, regulations, standards and statutes of the City of Ft. Lauderdale, Broward County, the State of Florida and the United States, including, *inter alia*, the applicable building, fire prevention and zoning codes.
> . . .

Plaintiff objected that this interrogatory was over broad and covered by other interrogatories.

18

The Court held that Plaintiff previously agreed to produce these documents in response to the subpoena served on Ms. Wickman, in regard to Plaintiff New River, and thus, no additional response was required to this interrogatory or its subparts 17a and 17b.

**Interrogatory No. 18**

Defendants' proposed interrogatory reads as follows:

> 18.     For the period of time from the date that Plaintiff purchased the Property until June 11, 2007, list by date each time an appraisal of the Property was requested, identify . . . by date the person(s) and/or entity(ies) that requested and/or commissioned each appraisal, set forth each time an appraisal of the Property was conducted, identify . . . the appraiser and identify . . . by date all documents (including, but not limited to, the appraisal report(s)) involved with, pertaining to and/or relating to each of the appraisals.

The Court directed Plaintiff to provide all appraisals that have not previously been provided.

Additionally, to the extent that valuation information exists that is not encompassed in the appraisals, Plaintiff must provide such information.

*CONCLUSION*

Accordingly, for the reasons set forth above, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion for Leave to Serve In Excess of Twenty-Five Interrogatories [D.E. 29] is **GRANTED in part** and **DENIED in part**.

**DONE AND ORDERED** at Fort Lauderdale, Florida, this 30th day of June, 2008.

_____
ROBIN S. ROSENBAUM
United States Magistrate Judge

cc:     Honorable William P. Dimitrouleas
        counsel of record